This is 4090587 Holtkamp Trucking Company v. David Fletcher. We have for the appellant, Paul, is it Dykstra? Dykstra. Dykstra. And for the appellee, David Boddicker? Daniel. Daniel. It says David, I apologize. And I apologize, Justice Stegman is not with us today, he is ill, but he will be listening to this on tape. Please proceed. May it please the Court, Counsel, my name is Paul Dykstra, good morning. One of my client's employees suffered a work-related injury, and we sent the person to the defendant for medical treatment. We paid his medical bill in due date, and we requested a copy of the medical records to correlate to that treatment, pursuant to a subpoena. The defendant's attorney sent an email to us instructing us that he has directed his client to refuse to comply with the subpoena by delivering a copy of the records to us. What was the reason he refused? He cited some arguments under law. First, that the Illinois Workers' Compensation Act does not provide for copying of medical records, when the statute actually, in Section 8A, explicitly says the employer shall receive copies of the records. He argued that a previous year, 2000, appellate court case of Clayton didn't talk about copies of medical records, when that was the only issue in that case. And then he made some analogy to the Illinois Medical Records Act, that only applies when patients request copies of records. In his amply brief, he added an additional reason that he was never afforded an opportunity to present copies of the records to us. And as we sit here today, we still have not received copies of those records. Well, I'm just a little confused. I know Dr. Fletcher's been doing workers' compensation cases since I was practicing law, and I've been a judge for 23 years. And he always produced records? I've been practicing for 15, and he always has, too. This particular defendant's attorney has, in some weekly newsletters, floated the theory that there is no subpoena power under the Illinois Workers' Compensation Act. And if there is, then some per-page fee applies, and perhaps his attorney would be able to explain more about it in terms of rationale. Apparently the statute talks about subpoenas. I am abundantly perplexed by his position. And the problem that we have faced in this situation is that we have literally paid tens of thousands of dollars in benefits. Our liability in workers' compensation is, with respect to the injured employee, we can't raise a defense to payment of those benefits on his behalf, that something peripheral is preventing us from doing that. So we have had to continue to pay these benefits while being utterly deprived of the right to initially investigate those initial medical records, the critical information that can establish whether we have a defense, whether there's a causal relationship and different things like that. A couple of very effective tools that we have in defending workers' compensation cases are sending the person for an independent medical examination and sending the medical records for utilization review to determine the necessity of proposed medical treatment. In both of those tools, we have to provide a complete copy of the medical records in order for that to be a credible and full evaluation of whatever the information that we send out is. By depriving us of those initial medical records, we have been systematically, deliberately, and utterly deprived of the opportunity to investigate this claim at all. So we've been put in the situation of having to pay on the claim without having any opportunity to investigate the underlying situation with respect to the medical bills and different things like that. Now, we filed a petition with the Illinois Workers' Compensation Commission to have that subpoena certified, which after a hearing, the arbitrator did. She certified the subpoena. We then filed this contempt proceeding in circuit court, and after a hearing, the trial court judge found the defendant to be in direct civil contempt of court and found that the conduct in this situation was willful, wanton, malicious, and consummations. But then the trial court denied our request for the costs and attorney's fees that we have incurred in pursuing this action, citing the fact that he believed that the defendant, Dr. Fletcher, relied in good faith on his attorney. And while that might well be, the attorney's advice is not based in good faith application of existing law. In fact, it is directly contrary to law. Now, whether Dr. Fletcher relied in good faith on the attorney or whatever the situation is, we are the direct... Let me ask you a couple questions. Yes. I apologize. I'm not an expert in workers' compensation. I babbled at it just enough to be dangerous. Well, I practice every day, and maybe one day I will be. I'm not either, but it's... The statute itself, Section 16, authorizes the arbitrator or the commission to pursue the contempt in circuit court. Right. It's the rules that the commission passed that authorize a party to proceed in circuit court. Is that constitutional? I mean, isn't that a legislative function that hasn't been delegated to the commission? I believe, when I had done research, and I didn't anticipate that issue coming up, and I apologize. I believe that there is a case that was published that found that it was constitutional to abide. There is a case, I found it. It's out of the first... The difficulty that we have in workers' compensation... In Illinois, there is no statute or law that compels the injured employee to sign an authorization for the employer to get medical records. The medical records are the basis for us to pay billions of dollars in medical bills per year as an industry. Because we cannot compel the injured employee to sign an authorization, the only method by which we can obtain medical records is in a subpoena. So it is personal to the party, to the respondent, to the employer, to the defendant in the workers' compensation case, to be able to use that procedural vehicle to protect our own interests in the case. And I think from a public policy standpoint, it would be very important for the party itself to be able to use the commission authority. I understand that. It's just my question is, did the commission exceed its authority here without a legislative mandate to permit that? And again, I wish that I had the citation. I've got the case here. Now let me ask another question. You didn't get your fees. There's a provision in Section 16 that permits an award of fees by the arbitrator for any issue that arises. Did you ask for fees below? That provision allows for fees to be awarded to the injured employee. If the employer's behavior is in bad faith. So there's no procedural vehicle for the employer to request or receive fees from an outside party. Dr. Fletcher is not a party to the workers' compensation case. So the commission does not have power or jurisdiction or authority over him personally to either award or to enforce any award of fees against Dr. Fletcher by the employer. Now, in this situation, the only appeal that is viable before the court today is our appeal of our denial of remedies. And of course, the judge is awarded a $0.15 per page copy fee. I'm not really sure where he came up with that number. That's the only issue here today. I would argue, as I have in my brief, that the standard of review here today is denial. The only evidence in this case consists of two documents. We have our subpoena and we have the email from the defendant's attorney to us saying we're refusing to provide copies of the records. I think it goes without saying that there's only one inference that can be drawn by those two particular documents. But even if it goes beyond that, certainly this court is in equal footing, as the trial court was, to interpret those two documents and apply the law to them. For that reason, I believe that the proper standard of review on the denial of our requests for attorney's fees and costs and a fine is, in fact, no vote. Now, part of the judgment that the trial court made of finding contempt was its finding that the defendant had conducted willful and contumacious behavior. To simply place a contempt label on something without any remedy attached to it would be an injustice not only to the party that was aggrieved by the impact of that behavior, but also it encourages that type of behavior in the future as not being punished. Let's talk about this contempt. Is this direct or indirect contempt? I believe it's direct because the end of Section 16 says that a commission subpoena... What is the site? It's 820 ILCS 305-16. Your brief says 205. Oh, I'm sorry. I apologize. The last sentence of Section 16 says that a commission subpoena shall be treated as a circuit court subpoena for the purpose of enforcement if there is a situation where the person decides not to comply. So for all intents and purposes, and that's why we get into the Supreme Court rules, Rule 237 and Rule 219, the statute says that this shall be treated as a subpoena effectively from the circuit court. So that would be where we get into the direct contempt of court. And obviously it is a civil contempt because of the fact that there is no criminal action in play in this situation. But that's how we arrive at the direct civil contempt of court. Now, where there is a finding by the trial court of willful and contumacious behavior, I think it goes without saying that there should be an award of the costs and the penalties associated with the aggrieved party having to proceed in pursuing that contempt finding. And I had cited the Climeworth case, which is a case that actually came from this court, as being an example in a couple of other sites that I made where attorneys have directed their clients to refuse to comply with subpoenas, with discovery. And the court doesn't take kindly to that and says, you know, the discovery process, the subpoena process under the law is the lifeblood of what we do. For the court to have the right and the power to command people to come to court and produce property and give testimony is the net of our entire judicial system. And where you have a rogue attorney giving advice not to comply with a subpoena and there's no good faith legal basis for that direction, I think it is completely appropriate for an award of a fine against either the party or the attorney or both for that type of behavior. Our request today is that this court remand the case back to the trial court with direction to award our costs and attorney's fees in this proceeding and with direction to award a significant fine for this behavior and the prejudice that has resulted on my client. Unless the court has any other questions, that concludes my opening. Thank you. May it please the court, counsel. My name is Daniel Boddicker. I am here on behalf of Dr. David Fletcher at SafeWorks Illinois, and I'm his DBA in this matter. Counsel argued that this case was limited to certain issues involving failure of the trial court to award costs and fees and potentially a penalty against my client. And he also very briefly mentioned the 15 cents per page copies fee that the judge awarded as well. We argue that there's a few more issues involved here, and I think I'll start with just the standard of care. We would agree that with respect to the issues that we cite in our response brief, that de novo would be appropriate for the first, second, and fourth issue. We believe, though, that there is also a third issue involved, and that being whether the trial court incorrectly found defendants in direct civil contempt and derogation of the Illinois Workers' Compensation Act. Did you file a cross-appeal? Judge, there was a cross-appeal filed. I understand, though, that I believe that was subsequently disallowed as far as time. You mean it was filed late? I believe it was filed late, Judge. So there is no cross-appeal? There is no cross-appeal, right. So what does that do to your ability to raise issues of your own on this appeal? Well, Judge, we don't think it does anything to our ability to basically discuss the issues involved here, simply because when you look at the trial court's order, and I'll backtrack, the order is dated July 13, 2009. There had been cross motions for summary judgment filed in that matter. The judge did not rule in favor of either party on the motions for summary judgment. The judge made various findings. Some were really arguably for my client. Some were for their client. He did hold us in contempt. However, he also ordered that copies of medical records were to be produced for 15 cents per page per copy. As I said, counsel briefly mentioned that fact, but that's very important, because in essence we believe the trial court tried to split the baby in this thing. He really, we do not believe, had a basis in law or in fact to order a 15 cent per page copy fee. Backtracking even further, initially when the subpoena had been served, our firm had contacted counsel's firm and said, we're more than happy to supply copies of the medical records to you, but we would request that you pay the fee that is set out in the Illinois comptroller's site for copies of medical records. Section 16 of the Illinois Workers' Compensation Act, which allows for subpoenas, does not say copies. It is not written in Section 16. It allows for a subpoena of the health care provider to bring original copies to the arbitration hearing, which counsel did not mention. We did. We brought the original medical records to the hearing in front of Arbitrator Neal and allowed her to review those, which is what Section 16 requires. We complied with that subpoena. At that time, Arbitrator Neal did say, well, I want you to produce copies as well. Copies of the medical records are dealt with in Section 8. Section 8 of the Illinois Workers' Compensation Act simply requires that the health care provider allow review of the copies, review of the original records and copy. It does not say for any fee. It does not say for no fee. And our argument is we do not believe the Illinois Workers' Compensation Act demands that the health care providers just provide unlimited copies for $20, which is the subpoena fee. The subpoena fee is for bringing the person to the arbitration hearing. That's the $20 fee. They are also supposed to pay $0.20 per mile travel fee to that person to come to the arbitration hearing. We did bring the original records to the arbitration hearing and let everybody review them. Counsel was discussing how they were so damaged because they didn't have an opportunity to see the records. They had an opportunity to review the records there. So were you paid the $20 appearance fee? We were paid a $20 appearance fee. We were not paid the travel expense fees, which we objected to at that time as the subpoena was not proper because we had not been paid that fee. So when Judge Weber ordered production of these medical records, did you produce them? Judge, the order allowed us to produce the records within seven days, and then we were to be paid the $0.15 per page fee within seven days after that. Counsel filed his appeal five days after the order was entered. We did not produce them. Did you move for a stay of Judge Weber's order? Not to my knowledge, Judge. So those documents should have been produced by now then? Pursuant to the order, but since the order was appealed, we proceeded also with moving forward with this appeal. But that's not a stay. A stay is something different. Correct, Judge. So you're again in contempt. They have not been produced to my knowledge. Judge, what we believe, though, is that, first of all, we did comply with Section 16 by bringing the original records to the arbitration hearing. We believe we complied with the Clayton case. The Clayton case itself argues there is only the $20 fee and the travel expense fee that should be paid for those records. What is different between Clayton and the facts of our case is that we actually brought the records to the arbitration hearing. And we had also offered to produce the records if the respondent would have paid a reasonable fee set out by the Illinois Comptroller for production of medical records. What does that say? I believe counsel had mentioned that Section 735 ILCS 5-8-206, which sets out a fee. It's a graduated fee for production of medical records by health care providers. There is no guidance in the Illinois Workers' Comp Act regarding payment of records. The subpoena fee, however, is simply to bring those records to the hearing. It's not for producing copies of the records. Section 8, which deals with allowing the petitioner or the respondent to make copies of records, does not provide any guidance as far as a fee. It does not say you've got to do it for free. And honestly, we would like some guidance. We do not believe that the judge's order of July 13th accurately set out the law when it said 15 cents per page. We don't know where that came from. It wasn't something we requested. It was not something that the plaintiff had requested. We requested that we be paid fees pursuant to 5-8-206. 2006, you mean? Yes, 2006, which is not 15 cents per page. What is the total bill on your medical records? Judge, I'm not exact. I want to say it was about $203, I believe. So as I said to your opponent, I've never heard of this battle. I thought that records were regularly produced by doctors. I know Dr. Fletcher regularly produces records. Judge, I believe Dr. Fletcher has in the past produced records, but I do not believe he has ever felt that it was done in compliance with the law. And when I say that with respect to workers' compensation subpoenas, if Dr. Fletcher was treating a patient from just a motor vehicle accident somewhere and counsel and or the plaintiff or defendant had requested records, they would pay pursuant to 735 ILCS 5-8-2006. They wouldn't get all the records just for a payment of $20.20 a mile, which is, again, a fee to be paid pursuant to Section 16 of the Illinois Workers' Compensation Act for bringing the original records to the hearing for review by the arbitrator. There is a benefit to seeing those original records there. So is this the only firm that you have this battle with or that Dr. Fletcher has this battle with? Judge, I believe there may be a few other cases ongoing at this time with this same issue. It's not just this firm in this case. Well, if you were a comp defense lawyer... And Judge, we are. That's what we do. If that's the case, and obviously your client does a ton of workers' comp, evaluation, treatment, rehab, so on and so forth, this gets to be a really big problem. And I think the line you've drawn in the sand here would require an employer's counsel to properly investigate claims and schedule Dr. Fletcher for a deposition at Dr. Fletcher's office, at which time, during the deposition, defense counsel, with the assistance perhaps of their medical expert, could go through, in the course of several hours per case, the medical records of the injured party and Dr. Fletcher's analysis and treatment of those injuries, again, occupying perhaps, oh, a half a day during a deposition, for which he gets a deposition fee. It doesn't bear any rational correlation to his hourly rate. Do you think that's the way Dr. Fletcher really wants to see the world work in his business? Your Honor, I do not believe that's the way he wants to see things work. Isn't it just a lot easier to say, sure, here's a copy of the records, and, by the way, I'd like to charge a modest copying expense, if that's okay with you, and most defense counsel would say, sure. Absolutely, and that's what we did in this case. That's what we requested counsel to do, just pay a modest copying fee, which they refused to do. This case, with all due respect to counsel, is not so much about contempt as about wanting to get those records for a $20 fee and a 20 cents a mile travel expense fee, no matter how many records there are, whether it's 3,000 records or 10 records. I'll have your opposing counsel try to answer the same question on rebuttal. So do you think Clayton supports your argument? We do think Clayton supports our argument. Clayton is limited to what it says, and it does say, with respect to a subpoena, it's all that needs to be paid for the subpoena is the $20 initial fee and 20 cents a mile travel fee for that person to bring the original records. We do not believe that Clayton says you have to produce copies of those medical records and send them off to however many parties want them for that amount. We don't believe that's what Clayton says. Well, I'm quoting from Head Note 456. It does not require the subpoenaing party to pay any per-page copy fees. And, Your Honor, in the Clayton case, they did not bring the original records to the arbitration hearing. In fact, the subpoena was for a date other than the arbitration hearing so that there is distinguishing facts in Clayton in what we are dealing with here. We believe we already complied with the subpoena when we brought those original records to the hearing for review by the arbitrator and counsel. So this case is a pretty big deal in the world of your world, workers' compensation, isn't it? We think it has potential to affect a lot of people, and there are a lot of people interested in it, yes. So can you tell me why Clayton is wrong? We don't believe Clayton is wrong. We don't believe Clayton goes to the facts of this situation where the party that had been subpoenaed did actually bring those records and comply with the subpoena by coming into the arbitration hearing with the original records for review. That did not happen in Clayton. Well, it seems to me that Clayton says that the rules of civil procedure don't apply to workers' compensation if the Workers' Compensation Act has a provision which governs the situation. And it seems to me that the Workers' Compensation Act, contrary to what Clayton says, does not govern the situation we have here, and that is the copying of documents. I believe the Workers' Compensation Act does discuss the copying of documents in Section 8. Well, not the cost of copying the documents. Exactly. It does not give guidance or lay out what the cost is. It doesn't say it should be free. It doesn't say it should be for a $20.20 per mile fee. It just doesn't say. And again, in this case, we had offered to make copies for a modest fee that was declined by counsel. Now, in your civil cases where Dr. Fletcher produces records, does he charge the rate in 2006? I believe he does, yes, Judge, and that is routinely paid by counsel on both sides in civil cases. We believe that, in essence, by the fact that we had produced the records at the arbitration hearing, Arbitrator Neal had incorrectly certified the contempt proceedings in civil courts. They should never have gotten there. Say that again? She incorrectly? We believe she incorrectly certified the contempt proceedings to proceed into state court because we believe we had fully complied with that subpoena by bringing those records into her. Having said that, yes, we did proceed in state court, and the judge did find our client in contempt. The problem, again, that we have is he ordered production of those records subsequent to that hearing for a $0.15 per page fee, which I believe both parties to this appeal don't know where he came from with that and don't feel is correct. We believe it should either be the fees set out by the state comptroller in Section 5-8-2006. Actually, that's what we believe it should be, those fees that would apply. With respect to counsel being damaged because of the fact that they claimed they could not review the records, didn't know what was there, or were on the hook, again, routinely we send out HIPAA-compliant release authorizations to the petitioner on every case we get, and we get them back. We don't have a problem getting those back. Not only that, with respect to receiving ever to a trial on workers' comp, the petitioner's attorneys have the duty to provide certified copies of all those records prior to the trial. So they will be obtained. And Section 8 does allow for counsels to come in and review the records at any time. I don't believe counsel ever made such an effort in this case. They just wanted copies of the records. That's all we've got to say, unless there are any further questions. Thank you. Thank you, Judge. Counsel has repeatedly said today that they have afforded us all of these opportunities and given us offers to pay a price to get a copy of the records in this case. But as you sit here today, and if you look at the trial court's hearing transcript, they have no idea how much they're asking for. It is a paper-thin argument for them to say they have been fully compliant in this situation. They have said, pay us a reasonable fee and we'll give you the records. They have not identified what they feel a reasonable fee is. They continue to refer to the Medical Records Act, which by its own preface says it only applies to requests for medical records by the patient and the agent of the patient. Why are we different? Honestly, I don't care what's in those medical records, except to the extent that those medical records tell us we have to pay hundreds, thousands, tens of thousands of dollars in benefits to the doctor who is holding the medical records. The ultimate irony in this situation is that Dr. Fletcher cashed the $3,600 that we paid him, as I mentioned, as I showed in the exhibit. He cashed the payment on the medical bills. He cashed the $20 subpoena check and then turned around and said, I'm not producing the records. I'm not even going to tell you why $3,600 is what you guys paid in this situation, but thank you for paying. Thank you very much. At least when I get my power bill and my power company doesn't charge me to give me a copy of the bill that justifies why I have to pay them lots of money every month and more and more every month, they're not charging me to tell me how much I owe them. They're providing me a basis for why I owe that amount. So the Medical Records Act in this situation and the fee schedule that it establishes has no application to subpoenas, which the word subpoena is never mentioned in the act. It has no application to parties in litigation. Believe me, we would rather not be in the underlying workers' compensation case. We certainly would not want to be here by our own choice. But we're put in the predicament by our liability under the Workers' Compensation Act, which is fine. And then we're put in the predicament of being in this room today by someone cashing the check and then refusing to provide copies of the records. Now the reason why the copies of the records correlate to the subpoena fee, and that's exactly what Clayton holds, to pretend that Clayton says anything else, the first and the last paragraph says this is about providing copies of records. The reason why that is is because of the fact that that simply is a barometer of how much we owe the party in this situation, the doctor, who is drawing up those records. I mean, otherwise we would have no interest in the records at all, versus a patient who may want to produce, may want to go in and inspect their own records to see what their medical condition is. Now my light is on, and I'd like to field any questions that you have. What was, what did the subpoena request? The subpoena requested copies of the medical records for the medical treatment for a patient named Jimmy Pease. To be produced in open court before arbitrator knew? To be produced to arbitrator Neal or in the alternative on the subpoena to mail a copy of those same records to my office. And the date was a date of the arbitrator's hearing? Yes. And he produced the originals? He came to court and produced, and there's no record of this, but he came to court and produced the original records to arbitrator Neal. They did not allow us to inspect them. And it was their position that arbitrator Neal inspecting those records constituted full compliance with the subpoena. And we're still sitting here with empty hands, $3,500 a quarter, saying, when do we get to see the records? Well, I'll ask you the same question I asked your opponent. Apparently this has become a big problem in your industry with this doctor. Why not start scheduling him for discovery depositions with his records? You can see his records. You can produce them in the office. You can sit at the council table while you read the records. Meanwhile, for a simple witness fee for a deposition, that's the way to get his attention? There is no discovery deposition process in the workers' compensation law. So we don't have the power to set a discovery deposition. It would have to be evidence deposition. And from the standpoint of that being an opportunity for us to review the records, it would be effective. It would get his attention without a doubt. But I don't think that's the state of the law. It would make him a lot of money, too. Well, I think the judge's point is that we could limit it to the $20 statutory fee for his appearance. So he would end up spending four or five hours and then wouldn't. Is that your point? Mm-hmm. That would be one way to handle it. And I notice my light has gone off. Go ahead. There are approximately 70,000 workers' compensation litigating cases filed in Illinois per year. And obviously in each of those cases we have treating doctors, many times multiple treating doctors. You have radiologists, pathologists, and if you have surgery, you have attending physicians. Any case may have anywhere from 10 to 50 doctors involved. To put upon the system the burden of going into everyone's office, and this is a public policy argument that the law supports, but from a public policy standpoint, 70,000 cases times, let's say, 10 doctors per case. We're talking 700,000 of these office visits of a half a day. That would cripple the medical treatment system and certainly the workers' compensation system. And then to put that back onto the workers' compensation arbitrators and say, well, it has to take place in front of the arbitrator 700,000 times per year, we would never have any cases. It would cripple an entire medical and workers' compensation industry, which certainly wasn't the intent behind the Workers' Compensation Act, which in its preamble said this act is in place to take care of the injured worker. And I don't see any way such an approach would affect that. Are you affirmed as mostly workers' compensation? We actually concentrated in that area. And what fee do you usually pay for production of medical records? We pay $20. I mean, like counsel said, we send a copy of an authorization to our opposing attorney and hope that he has his client sign them and send them back. If there's a situation where a provider says, well, we're not going to honor the subpoena, we need an authorization. It makes it a little easier rather than having to go into litigation every time against the hospital or the doctor. Okay, here's your authorization. There's nothing in the law to compel the injured employee to sign that and return it to us. And in many cases they refuse to do so because they say, why is it in my client's best interest to do this? Don't you have to get an authorization to have your employee examined by your expert? No, no, because it's not a treating situation, so there is no physician-patient relationship. Don't doctors now under HIPAA require it? No, no, because it's not treatment. It's pure examination. It's all couched in the physician-patient relationship, and because there is no physician-patient relationship established, there's no HIPAA concern under federal or state law. My husband has argued that point with a couple hospitals. We've had those arguments, too, and I'm not sure who's advising hospitals. HIPAA is pretty clear that it only applies to treating doctors and examining doctors, not treating doctors. Thank you for your time. All right, thank you very much. We'll take this matter under advisement and recess for a few short minutes.